UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| BMO HARRIS BANK N.A., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:17 CV 45 |
| | ) |
| J-LIN TRUCKING, INC. and | ) |
| JAMES JONES, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff BMO Harris Bank N.A. ("BMO" or "plaintiff") brought this action for breach of contract against defendants J-Lin Trucking, Inc. ("J-Lin") and James Jones ("Jones"). (DE # 1.) Now, plaintiff moves for summary judgment on all claims. (DE # 19.) For the reasons stated below, the motion will be granted.

### I.   LEGAL STANDARD

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party

and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). If the nonmoving party fails to establish the existence of an essential element on which he or she bears the burden of proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

In the case at hand, defendants did not file a response to the motion for summary judgment, despite being given proper notice of the motion. (*See* DE # 19-5.) Pursuant to N.D. Ind. Local Rule 7-1(d)(4), a party's failure to file a response within the time prescribed may subject the motion to summary ruling. Nevertheless, "a nonmovant's failure to respond to a summary judgment motion, or failure to comply with [the local rules], does not, of course, automatically result in judgment for the movant." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012). BMO "must still demonstrate that it is entitled to judgment as a matter of law." *Id*. Although defendants have not provided their own versions of the facts, we still view all facts asserted by BMO in the light most favorable to defendants and draw all reasonable inferences in their favor. *Id*.

II.     **BACKGROUND**

J-Lin entered into four Master Lease Agreements and one Loan and Security Agreement with General Electric Capital Corporation (collectively, the "Agreements"). (DE # 19-3 at 2.) General Electric Capital Corporation later assigned the Agreements to BMO. (*Id*. at 10–11.)

On December 28, 2012, the parties entered into the first Master Lease Agreement ("Agreement 1"). (DE # 19-3 at 13.) J-Lin agreed to make monthly payments for a term

2

of 60 months in exchange for financing for the use of a 2012 Kenworth Model T660-Series vehicle. (*Id*. at 2.) On February 5, 2013, the parties entered into a second Master Lease Agreement ("Agreement 2"), whereby J-Lin agreed to make monthly payments for a term of 60 months in exchange for financing for the use of a 2012 Kenworth Model T700 vehicle. (*Id*. at 2, 26.) On November 21, 2013, the parties entered into a third Master Lease Agreement ("Agreement 3"), whereby J-Lin agreed to make monthly payments for a term of 60 months in exchange for financing for the use of a 2014 Kenworth Model T680 vehicle. (*Id*. at 2–3, 29.) On January 15, 2014, the parties entered into a fourth Master Lease Agreement ("Agreement 4"), whereby J-Lin agreed to make monthly payments for a term of 60 months in exchange for financing for the use of another 2014 Kenworth Model T680 vehicle. (*Id*. at 3, 32.) Lastly, on June 24, 2015, the parties entered into a loan and security agreement ("Agreement 5"), whereby J-Lin agreed to make monthly payments for a term of 60 months in exchange for financing for the use of a 2012 Kenworth Model T660-Series vehicle. (*Id*. at 3, 35.) Pursuant to those agreements, General Electric Capital Corporation provided J-Lin with financing for the equipment described in the Agreements. (*Id*. at 47.)

On December 28, 2012, February 5, 2013, November 21, 2013, January 15, 2014, and June 24, 2015, contemporaneously with the execution of the Agreements, defendant Jones executed five Continuing Guaranties (collectively, the "Guaranties"). (DE # 19-3 at 4, 41–44.) Each Guaranty states that Jones will "unconditionally guarantee" all of J-Lin's "present and future liabilities, obligations, and indebtedness to GE Capital." (*Id*.)

3

More specifically, Jones agreed "to pay on demand the entire [i]ndebtedness and all losses, costs, attorneys' fees and expenses which may be suffered by GE Capital by reason of [J-Lin]'s default" under the Agreements.[1] (*Id.*) These Guaranties were later assigned to BMO. (*Id.* at 10–11.)

On January 1, 2017, J-Lin trucking defaulted under the terms of the Agreements by failing to make the minimum monthly payments. (DE # 19-3 at 4.) All of the Agreements define default as the failure to pay any amount owed.[2] (*Id.* 19-3 at 3, 16, 37.) All say that upon default, BMO may declare any indebtedness "immediately due and payable." (*Id.* at 3, 16–17, 37.)

In two letters dated April 28, 2017, BMO notified J-Lin and Jones, respectively, that J-Lin was in default and that the balance due was $369,142.91. (DE # 19-3 at 4, 47, 49.) Defendants owed $72,055.40 on Agreement 1 (*id.* at 51), $57,344.73 on Agreement 2 (*id.* at 52), $85,591.14 on Agreement 3 (*id.* at 53), $91,542.72 on Agreement 4 (*id.* at 54), and $62,608.92 on Agreement 5 (*id.* at 55). After certain equipment was retrieved and sold, the balance due was reduced to $281,173.30, according to plaintiff. (*Id.* at 4.) Neither J-Lin nor Jones have paid this amount. (*Id.* at 5.)

---

[1] Only four of the Guaranties were attached to the motion for summary judgment, but the uncontested affidavit of Kristin Miller states that the fifth Guaranty exists and guarantees performance of all present and future liabilities, obligations, and indebtedness under Agreement 5. (*See* DE # 19-3 at 4.)

[2] Agreements 2, 3, and 4 incorporate the terms of Agreement 1—including the section on "Default"—by reference. (DE # 19-3 at 23, 26, 29.)

On May 25, 2017, BMO filed a complaint containing two claims: (1) a breach of contract claim against J-Lin for breach of the Agreements ("Count I"), and (2) a breach of contract claim against Jones for breach of the Guaranties ("Count II"). (DE # 1 at 8–9.)

On April 10, 2018, plaintiff filed a motion for summary judgment in its favor on Counts I and II of the complaint. (DE # 19.) Neither defendant responded to the motion in any manner. The motion is now ripe for ruling.

### III. DISCUSSION

BMO moves for summary judgment on each of its breach of contract claims. Breach of contract claims are state-law claims, and this court has jurisdiction over the claims only on the basis of diversity. In order to assess the breach of contract claims, the court must first determine which state's laws to apply.

BMO does not include any choice-of-law analysis in its brief, but it cites Indiana cases in support of its claims. (*See* DE # 19-2 at 6.) However, "[w]hen a federal court hears a case in diversity, it does not necessarily apply the substantive law of the forum state; rather, it applies the choice-of-law rules of the forum state to determine which state's substantive law applies." *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009). Because this case is before the court on diversity grounds, the court will apply Indiana's choice-of-law rules.

In contract actions, Indiana's choice of law rules require that the law of the state with the most significant contacts to the subject matter of the litigation be applied. *Am. Family Mut. Ins. Co. v. Williams*, 839 F. Supp. 579, 582 (S.D. Ind. 1993). Additionally,

5

"Indiana choice-of-law provisions generally favor contractual stipulations as to governing law." *Kentucky Nat. Ins. Co. v. Empire Fire & Marine Ins. Co.*, 919 N.E.2d 565, 575 (Ind. Ct. App. 2010). In this case, defendants are both from Indiana (DE # 1 at 1), but the first four Agreements state they are governed by Texas law (DE # 19-3 at 19), and Agreement 5 states it is governed by Utah law (DE # 19-3 at 38).

Nevertheless, "a court need only undergo the analysis above if there is a difference between the relevant laws of the different states." *Lafayette Neighborhood Hous. Servs., Inc. v. Neighborhood Reinvestment Corp.*, Cause No. 4:10-CV-086 JD, 2013 WL 12318273, at *9 (N.D. Ind. Mar. 18, 2013) (citing *Hartford Acc. & Indem. Co.*, 690 N.E.2d at 291 ("[B]efore entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states.")). "Indiana does not engage in *dépeçage*, which is the process of analyzing different issues within the same case separately under the laws of different states." *Id*. (internal quotation marks omitted).

There is no relevant difference in the law of Indiana, Texas, and Utah, as it relates to BMO's first breach of contract claim. Under Texas law, the elements of a breach of contract claim are "(1) a valid contract; (2) performance or tendered performance; (3) breach of contract; and (4) damages resulting from the breach." *Myan Mgmt. Group, L.L.C. v. Adam Sparks Family Revocable Trust*, 292 S.W.3d 750, 754–55 (Tex. App. 2009). Under Utah law, the elements of a breach of contract claim are "(1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party,

6

and (4) damages." *MBNA Am. Bank, N.A. v. Goodman*, 140 P.3d 589, 591 (Utah Ct. App. 2006). Under Indiana law, the essential elements of a breach of contract action are: (1) the existence of a contract, (2) the defendant's breach thereof, and (3) damages. *Guardian Nat'l Acceptance Corp. v. Swartzlander Motors, Inc.*, 962 F. Supp. 1137, 1143 (N.D. Ind. 1997). Indiana law does not specify a performance requirement on the part of the party seeking recovery, but regardless, the undisputed facts before the court indicate that BMO performed under the contract by providing financing. (*See* DE # 19-3 at 47.)

As to the other factors, which are common in each state, BMO has pointed to evidence in the record to satisfy each factor. As to the existence of a contract, BMO has included the five Agreements, each of which is signed by both parties indicating offer and acceptance. (*See* DE # 19-3 at 20, 22, 24, 27, 30, 33, 39.) As consideration, General Electric Capital Corporation (and later, BMO) offered financing in exchange for repayment by J-Lin. (*See id.* at 2–3.) This is sufficient for a valid contract. *See Straub v. B.M.T. by Todd*, 645 N.W.2d 587, 598 (Ind. 1994). Second, J-Lin breached the Agreements when it failed to pay its minimum monthly payments. (DE # 19-3 at 4.) This has caused damages to BMO. (*Id.* at 5.) Therefore, under any of Texas, Utah, or Indiana law, the elements of breach of contract are met, J-Lin is liable for breach of contract, and summary judgment is appropriate against J-Lin.

BMO's second claim is for breach of the Guaranty contracts, against defendant Jones. The Guaranties do not contain choice of law provisions, and BMO does not say which state's law should apply. Therefore, the court will apply Indiana law because

Indiana—as the primary place of business of J-Lin and the Jones's state of residence—has the most significant contacts to the subject matter of the litigation. *See Am. Family Mut. Ins. Co. v. Williams*, 839 F. Supp. 579, 582 (S.D. Ind. 1993)

Under Indiana law, "[g]uaranties are contracts and are governed by the same rules and principles applicable to . . . other contracts." *Fifth Third Bank v. Double Tree Lake Estates, LLC.*, No. 2:11-cv-0233-PPS-PRC, 2014 WL 3659780, at *4 (N.D. Ind. July 23, 2014). Therefore, the court will apply the same Indiana law breach of contract elements that it did regarding the claim against J-Lin.

Once again, BMO has provided evidence in the record to satisfy each of those elements. BMO has included four of the signed Guaranties indicating offer and acceptance, and an unopposed affidavit confirming the existence of the fifth Guaranty. (DE # 19-3 at 4, 41–44.) Additionally, consideration has been demonstrated because Jones agreed pay any indebtedness under the Agreements, and the Guaranties were entered into contemporaneously with each of the Agreements. (*Id.* at 4, 41–44); *see Loudermilk v. Casey*, 441 N.E.2d 1379, 1384 (Ind. Ct. App. 1982) ("If a guaranty is made at the time of the contract to which it relates, so as to constitute part of the consideration for the contract, sufficient consideration exists. . . . It is not necessary for the guarantor to derive any benefit from the principal contract or the guaranty.") Thus, the first element of the breach of contract claim is established. Additionally, Jones breached the contract by failing to pay J-Lin's indebtedness incurred under the Agreement. (DE # 19-3 at 5.) And lastly, BMO has incurred damages due to this failure to pay. (*Id.*)

Accordingly, under Indiana law, Jones is liable for breach of contract, and summary judgment is appropriate against Jones.

Regarding the quantity of damages, BMO claims defendants owe $281,173.30. BMO reached that total by adding the amounts it says that defendants owe on each of the five Agreements following default and the sale of equipment: $34,158.70 on Agreement 1, $57,344.73 on Agreement 2, $67,230.86 on Agreement 3, $91,542.72 on Agreement 4, and $30,896.29 on Agreement 5. (DE # 19-3 at 5.) BMO has provided uncontested evidence for the amounts owed, in the form of balance summaries attached to the motion for summary judgment. (*Id*. at 57–61.) Four of the amounts used in BMO's calculation match those listed in the balance summaries. (See *id*. at 57, 59–61.) However, according to the balance summary for Agreement 4 (*id*. at 58), defendants owe only $43,735.06 on Agreement 4, rather than $91,542.72, which was the amount defendants owed on Agreement 4 at the time BMO sent the default letters to defendants (*id*. at 54). This lower number is supported by plaintiff's assertion that all equipment was retrieved and sold, except for the equipment which was the subject of Agreement 2. (*See* DE # 19-2 at 5.) If the equipment from Agreement 4 was sold, then the amount owed on that Agreement would presumably be reduced from the prior total of $91,542.72. Since BMO's statement regarding the sale of equipment and the uncontested balance sheet relied on by BMO itself both indicate that $43,735.06 is the correct amount owed on

9

Agreement 4, the court will use that amount in its calculation of damages. Therefore, the total balance due is $233,365.64.[3]

## IV. CONCLUSION

For the reasons set forth above, the motion for summary judgment (DE # 19) is **GRANTED**. The Clerk is directed to **ENTER FINAL JUDGMENT** in this case in favor of plaintiff BMO Harris Bank N.A., and against defendants J-Lin Trucking, Inc. and James Jones, in the amount of $233,365.64.

**SO ORDERED.**

Date: March 25, 2019

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT

---

[3] In its motion for summary judgment, BMO does not request attorneys' fees, costs, or pre-judgment interest. (*See* DE # 19.)